**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action |
| | § | No. C-06-315 |
| DAVIS-RUIZ CORPORATION, | § | |
| D/B/A ADVANTAGE INSPECTION, | § | |
| | § | |
| Defendant/Counter-Claimant. | § | |
| | § | |

_____

| | | |
|---|---|---|
| DAVIS-RUIZ CORPORATION, | § | |
| D/B/A ADVANTAGE INSPECTION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action |
| v. | § | No. C-06-350 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING MID-CONTINENT CASUALTY COMPANY'S MOTION FOR**
**SUMMARY JUDGMENT AND DENYING DAVIS-RUIZ CORPORATION, D/B/A**
**ADVANTAGE INSPECTION'S MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Davis-Ruiz Corp., D/B/A
Advantage Inspection's ("Davis-Ruiz") and Mid-Continent Casualty
Company's ("Mid-Continent") competing oral motions for summary
judgment on the issue of whether Mid-Continent has a duty to defend
Davis-Ruiz in an underlying Illinois state court litigation,
pursuant to the Texas "eight corners rule" for duty to defend
cases.[1]  See Gulf Chem. & Metallurgical Corp. v. Associated Metals

_____

[1]The underlying Illinois state court litigation is
Williamson v. Marathon Ashland Petroleum, LLC v. Advantage
Inspection, Case No. 2004-L-5, Second Judicial Circuit Court,

& Minerals Corp., 1 F.2d 365, 369 (5th Cir. 1993).  For the reasons set forth below, the Court hereby GRANTS Mid-Continent's motion for summary judgment and DENIES Davis-Ruiz' motion for summary judgment.

## I.   <u>Jurisdiction</u>

The Court has diversity jurisdiction over this consolidated action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

## II.  <u>Procedural Background</u>

Mid-Continent filed Case No. 06-315 against Davis-Ruiz on July 21, 2006.  Mid-Continent seeks a declaratory judgment that it does not have a duty to pay money to Davis-Ruiz pursuant to the relevant insurance policy.  (D.E. 1, Case No. 06-315).

On June 6, 2006, Davis-Ruiz filed a complaint against Mid-Continent in the 148th Judicial District Court of Nueces County, Texas.  Davis-Ruiz brought causes of action against Mid-Continent for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices and Consumer Protection Act.  (D.E. 2, Exh. 5, Case No. 06-350).  Mid-Continent removed the case to this Court on August 8, 2006, where it was assigned Case No. 06-350.

Because these two actions involve identical parties and common

---

Crawford County, Illinois (hereinafter, the "<u>Williamson</u> litigation").

questions of law and fact, the Court <u>sua</u> <u>sponte</u> consolidated the cases pursuant to Fed. R. Civ. P. 42(a) ("when actions involving a common question of law or fact are pending before the court ... it may order all the actions consolidated"); <u>see also</u> <u>Miller v. United States Postal Serv.</u>, 729 F.2d 1022, 1036 (5th Cir. 1984).[2]  The Court designated Case No. 06-350 as the lead case, and Case No. 06-315 as a member case.[3]

On September 7, 2006, at the initial pretrial and scheduling conference in Case No. 06-315, both Mid-Continent and Davis-Ruiz agreed to convert their pleadings into competing motions for summary judgment on the issue of whether Mid-Continent has a duty to defend Davis-Ruiz in the <u>Williamson</u> litigation, pursuant to Texas' "eight corners rule" for duty to defend cases.  <u>See</u> <u>Gulf Chem.</u>, 1 F.3d at 369.

## III. <u>Factual Background</u>

Davis-Ruiz purchased a general liability insurance policy from Mid-Continent, policy number 04-GL-000090137.  (Case No. 06-315, D.E. 1, Exh. 4, Insurance Policy, ML 14 87).  The policy period was from May 18, 2002 to May 18, 2003.  (<u>Id.</u>).

Davis-Ruiz entered into a Major Service Contract with Marathon

---

[2]"A motion to consolidate is not required, the court may invoke Rule 42(a) <u>sua</u> <u>sponte</u>."  <u>Miller</u>, 729 F.2d at 1036.

[3]The Court made this designation pursuant to Local Rule 7.6, which designates the "oldest case" as the case filed first in any court, state or federal.

Ashland Petroleum ("Marathon").  (Case No. 06-315, D.E. 1, Exh. 6, <u>Williamson v. Marathon Ashland Petroleum, LLC v. Advantage Inspection</u> Third-Party Complaint ("Third-Party Complaint"), ¶¶ 6-18).  Pursuant to that contract, on October 14, 2002, Davis-Ruiz inspected a tank and attached ladder at a Marathon refinery in Robinson, Illinois.  (Third-Party Complaint, ¶¶ 1, 19, 21-24).  Davis-Ruiz submitted a form to Marathon indicating that the ladder on the subject tank was "inspected and found to be 'acceptable.'"  (Third-Party Complaint, ¶¶ 22-24).

Lang Williamson, plaintiff in the underlying <u>Williamson</u> litigation, alleges that the ladder attached to the subject tank broke while Mr. Williamson was working on the tank, causing Mr. Williamson to suffer personal injuries.  (Third-Party Complaint, ¶¶ 1-2).

Mr. Williamson brought suit against Marathon in Illinois state court, alleging that Marathon "breached a duty of care" by its: (1) failure to properly inspect the ladder for defects or structural problems; (2) failure to warn Mr. Williamson of the dangerous conditions that existed on the storage tank; (3) failure to inspect the work site for safety; and (4) failure to ensure that the tank ladder was properly supported, repaired and maintained.  (Third-Party Complaint, ¶ 3).

On May 24, 2006, Marathon brought a Third-Party Complaint against Davis-Ruiz, seeking indemnity and/or contribution pursuant

to Illinois' contributory fault laws.  (Third-Party Complaint, p. 1, ¶¶ 26-33).

**IV.  <u>Discussion</u>**

    **A.   <u>Summary Judgment Standard</u>**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ellison v. Software Spectrum, Inc.</u>, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Judwin Props., Inc., v. U.S. Fire Ins. Co.</u>, 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Wallace v. Texas Tech. Univ.</u>, 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence

of evidence to support the nonmovant's case.  See Celotex Corp.,
477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander,
Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant
"may not rest upon the mere allegations or denials of his pleading,
but ... must set forth specific facts showing that there is a
genuine issue for trial."  First Nat'l Bank of Arizona v. Cities
Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf
Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating
that nonmoving party must "produce affirmative and specific facts"
demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts,
"the evidence of the nonmovant is to be believed, and all
justifiable inferences are to be drawn in his favor."  Willis, 61
F.3d at 315.  Summary judgment is not appropriate unless, viewing
the evidence in the light most favorable to the nonmoving party, no
reasonable jury could return a verdict for that party.  See, e.g.,
Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399
(5th Cir. 2000).

B.   **Duty to Defend**

In determining whether an insurer has a duty to defend an
insured, Texas courts follow the "eight corners" or "complaint
allegation" rule.  Canutillo Indep. Sch. Dist. v. Nat'l Union Fire
Ins. Co., 99 F.3d 695, 701 (5th  Cir. 1996); see also Gulf Chem.,

1 F.3d 365 at 369; Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 545 n.24 (5th Cir. 1992).  Pursuant to the eight corners rule, this Court may only examine "the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists."  Gulf Chem., 1 F.3d at 369.  The complaint to be used in the "eight corners rule" is the "latest amended pleading upon which the insurer based its refusal to defend the action."[4] Canutillo, 99 F.3d at 701; see also Rhodes v. Chicago Ins. Co., 719 F.2d 116, 117 (5th Cir. 1983).  Pursuant to the "eight corners rule," the duty to defend is not affected by facts ascertained before the underlying lawsuit began, by facts developed during the course of the underlying litigation, or by the ultimate outcome of the underlying case.  Canutillo, 99 F.3d at 701.

An insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage.  See Canutillo, 99 F.3d at 701; Rhodes, 719 F.2d at 119; Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 848 (Tex. 1994).  When applying the "eight corners rule," courts are to presume that the facts alleged in the underlying complaint are true, and courts are to liberally construe the allegations in favor of the insured.  Doubts are to be resolved in favor of the duty to

---

[4]The underlying complaint in this case is Marathon's Third-Party Complaint against Davis-Ruiz.  Mid-Continent based its decision not to defend Davis-Ruiz in the Williamson litigation on its review of the Third-Party Complaint.  (Case No. 06-315, D.E. 1, Exh. 9, Letter from Mid-Continent to M. Davis).

defend.   See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997); Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965); King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002).

### C.   Insurance Contract Interpretation

A district court's interpretation of an insurance contract is a question of law.  See Principal Health Care of La., Inc. v. Lewer Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994); F.D.I.C. v. Mijalis, 15 F.3d 1314, 1319 (5th Cir. 1994).   Texas rules of contract interpretation control in a diversity case.   See Canutillo, 99 F.3d at 700; Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1095 (5th Cir. 1995) ("[i]nsurance policies are contracts and are governed by the principles of interpretation applicable to contracts ... [s]tate law rules of construction govern in diversity cases.").   Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts generally.  See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).

In determining the scope of coverage, courts "examine the policy as a whole to ascertain the true intent of the parties." Utica Nat'l Ins. Co. Of Texas v. Am. Indemnity Co., 141 S.W.3d 198, 202 (Tex. 2004); see also Nat'l Union v. CBI Indus., 907 S.W.2d at

520 ("The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument."); Mid-Century Ins. Co. of Texas v. Lindsey, 997 S.W.2d 153, 158 (Tex. 1999); Forbau, 876 S.W.2d at 133; Barrett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987).

D.   **Application of the Eight Corners Rule**

Based on the "eight corners" of the insurance policy and the underlying complaint, the Court finds that Mid-Continent does not have a duty to defend Davis-Ruiz against Marathon's Third-Party Complaint in the Williamson litigation. See Gulf Chem., 1 F.3d at 369.

1.   **Insurance Policy**

The Commercial General Liability Coverage Form in the policy states that:

> [Mid-Continent] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Mid-Continent] will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, [Mid-Continent] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

(Insurance Policy, CG 00 01 01 96, p. 4, ¶ B(1)(a)).

The "Designated Professional Services" exclusion to coverage states that "[t]his insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' due to the

rendering of or failure to render any professional service." (Insurance Policy, CG 21 16 07 98).

### 2.   **Third-Party Complaint**

In the Third-Party Complaint, Marathon brings causes of action against Davis-Ruiz for contribution, express indemnity and implied indemnity. (Third-Party Complaint, ¶¶ 25-33).

#### a.   **Contribution**

In its contribution claim, Marathon alleges that Davis-Ruiz had a duty to perform the inspection of the tank with due care for subsequent users of the ladder/stairway. (Third-Party Complaint, ¶ 26). Marathon also alleges that if it was negligent in the inspection of the subject ladder, then it was because Davis-Ruiz failed to properly inspect the ladder, failed to warn Marathon of the dangerous conditions that existed on the storage tank, and was otherwise negligent in its failure to ensure that the ladder was properly supported, repaired and maintained. (Third-Party Complaint, ¶ 27(a)-(d)). Marathon also alleges that Davis-Ruiz violated provisions of the Major Service Contract "by failing to furnish experienced personnel and supervision ... and by asserting that it was experienced in its work and possessed the skills and resources to perform its work." (Third-Party Complaint, ¶ 27(e)).

#### b.   **Indemnity**

In its express indemnity claim, Marathon alleges that sections 13.1 and 13.3 of the Major Service Contract "expressly require"

Davis-Ruiz to indemnify Marathon against any allegations "which occurr[ed] in connection with [Davis-Ruiz'] work".  (Third-Party Complaint, ¶ 30).

In its implied indemnity claim, Marathon alleges that section 4.3 of the Major Service Contract and Illinois law provide for implied indemnity.  (Third-Party Complaint, ¶¶ 32-33).  Section 4.3 provides that "Any inspection or approval of the Work given under this Contract by [Marathon] shall not relieve [Davis-Ruiz] ... from its responsibility for the quality of the Work, nor from any warranty, guarantee or liability under law, either express or implied, or in this Contract."  (Third-Party Complaint, ¶ 8).

### 3. Professional Services Exclusion to Coverage

Marathon's claims in the Third-Party Complaint are all based squarely on Davis-Ruiz' work pursuant to the Master Service Contract, specifically Davis-Ruiz' inspection of the subject tank and attached ladder.  (Third-Party Complaint, ¶¶ 21-22, 26-28, 30, 32-33).  That inspection falls within the policy's professional services exclusion to coverage.

### a. Definition of "Professional Services"

The definition of "professional services" in the context of an insurance policy is set forth in Atlantic Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P., 982 S.W.2d 472, 476-477 (Tex. App.-- Dallas 1998).  See Potomac Ins. Co. of Illinois v. Jayhawk Med. Acceptance Corp., 198 F.3d 548, 551-552 (5th Cir. 2000).  The court

in <u>Atlantic Lloyd's</u> held as follows:

> A professional must perform more than an ordinary task to
> perform a professional service.  To qualify as a
> professional service, the task must arise out of acts
> particular to the individual's specialized vocation.  We do
> not deem an act a professional service merely because it is
> performed by a professional.  Rather, it must be necessary
> for the professional to use his specialized knowledge or
> training.

<u>Atlantic Lloyd's</u>, 982 S.W.2d at 476-477[5]; <u>see also</u> <u>Duncanville</u>

<u>Diagnostic Center, Inc. v. Atlantic Lloyd's Ins. Co. of Texas</u>, 875

S.W.2d 788, 790 (Tex. App.--Eastland 1994) (internal citations

omitted) ("a profession involves labor, skill, education, special

knowledge and compensation or profit."); <u>Nast v. State Farm Fire &</u>

<u>Cas. Co.</u>, 82 S.W.3d 114, 122 (adopting the definition of

"professional services" established in the insurance context for

Deceptive Trade Practices Act cases).[6]

---

[5]In <u>Atlantic Lloyd's</u>, the defendant was sued for defamation
after a firm attorney sent out a solicitation letter containing
confidential information.  <u>See</u> <u>id.</u> at 474.  The court found that
the mailing of the solicitation letter was not a "professional
service," as "[s]olicitng clients does not require a lawyer to
use the specialized education and knowledge inherent to lawyers.
A lawyer's day-to-day functions include advising clients,
drafting pleadings, analyzing caselaw, and conducting trial
strategy sessions, among other activities."  <u>Id.</u> at 478.  The
court held that the act of sending out the solicitation letter
(which did not include any legal advice) therefore did not fall
within the insurance policy's professional services exclusion.
<u>See</u> <u>id.</u>

[6]Of note, the Court does not find the policy term
"professional services" to be ambiguous.  While the term is not
specifically defined in the policy, "Texas courts have previously
given meaning to the phrase 'professional services' where it has
not been specifically defined in an insurance contract,
reinforcing that the absence of a policy definition does not

b.   **Davis-Ruiz' Inspection of the Tank and Ladder**

In the instant case, Davis-Ruiz' inspection of the subject tank and ladder was the performance of a professional service. Marathon contracted with Davis-Ruiz to perform the inspection, and Davis-Ruiz "performed the inspection in accordance" with the Major Service Contract.  (Third-Party Complaint, ¶ 22).  The contract required that "the Work shall be performed in a good and workmanlike manner by qualified ... workers", and Davis-Ruiz warranted that it was "experienced in the Work to be undertaken on behalf of [Marathon]" and that it "possesse[d] the skills and resources to complete the Work."  (Third-Party Complaint, ¶ 10). The contract also required Davis-Ruiz to "furnish experienced personnel, supervision [and] ... all other things necessary or required in and for the proper and timely performance of the Work." (Third-Party Complaint, ¶ 7).

Davis-Ruiz does business under the name "Advantage *Inspection*," and inspecting the tank and ladder was what Marathon

---

create an ambiguity."  Harris Methodist Health System v. Employers Reinsurance Corp., 1997 WL 446459, *4 (N.D. Tex. 1997); see also State Farm Lloyds v. Performance Improvement Corp., 974 S.W.2d 135, 138 (Tex. App.--San Antonio 1998).  A term is ambiguous if it is reasonably subject to more than one interpretation.  See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  The term "professional services" is not ambiguous, as it has been defined by the courts and is not reasonably subject to multiple interpretations.  See Coker, 650 S.W.2d at 394; Atlantic Lloyd's, 982 S.W.2d at 477; see also Nat'l Union v. CBI Indus., 907 S.W.2d at 520 ("If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous").

paid it to do, pursuant to its experience and qualifications. (Third-Party Complaint, ¶¶ 6, 9-10, 21-24).  The inspection of the tank and ladder in accordance with the Major Service Contract falls within the definition of "professional service" as set forth by Texas courts, as Davis-Ruiz performed the work for "compensation or profit," and Davis-Ruiz was required to use its specialized skills, experience, qualifications and training.  (Third-Party Complaint, ¶¶ 9-10).  <u>Duncanville Diagnostic</u>, 875 S.W.2d at 790; <u>Atlantic Lloyd's</u>, 982 S.W.2d at 476-477.

Marathon's allegations in the Third-Party Complaint are all based on Davis-Ruiz' performance of a professional service (the tank/ladder inspection). (Third-Party Petition, ¶¶ 26-28, 30, 32-33).  These allegations are excluded from coverage under the professional services exclusion, which states that the policy does not apply to "bodily injury ... due to the rendering of or failure to render ***any professional service***."  (Insurance Policy, CG 21 16 07 98).  Accordingly, based on the eight corners of the policy and the underlying complaint, Mid-Continent does not have a duty to defend Davis-Ruiz against Marathon's claims in the <u>Williamson</u> litigation.  <u>See</u> <u>Nat'l Union v. Merchs. Fast Motor Lines</u>, 939 S.W.2d at 141.

## V.   <u>Conclusion</u>

For the reasons set forth above, the Court hereby GRANTS Mid-Continent's oral motion for summary judgment on the issue of Mid-

Continent's duty to defend Davis-Ruiz in the <u>Williamson</u> litigation. The Court also hereby DENIES Davis-Ruiz' oral motion for summary judgment on the same duty to defend issue.

    SIGNED and ENTERED this 3rd day of October, 2006.


_____
       Janis Graham Jack
   United States District Judge